```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/18/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                                      :
JOEL PENA,                                :
                                                      :
                                        Plaintiff,  :                       1:24-cv-6378-GHW
                                                      :
                                -v-                           :      MEMORANDUM OPINION &
                                                      :                 ORDER
MIAMI HEAT LIMITED PARTNERSHIP, *et al.*,  :
                                                      :
                                        Defendants.  :
------------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

      Plaintiff Joel Pena, proceeding *pro se*,[1] is a fashion designer and apparel industry entrepreneur who claims to have protected trademarks in the phrases CULTURE TV ®, CULTURE TV™, and CULTURE™ (collectively, the "Marks"). Defendant Miami Heat Limited Partnership ("Miami Heat") is a retailer of apparel associated with the professional basketball team of the same name. Since at least the 2016–2017 season, Miami Heat has continuously and publicly sold apparel bearing the "CULTURE" mark, as the team has marketed and promoted itself using the term "Court Culture." Mr. Pena commenced this action claiming that the defendants infringed on his trademarks. Miami Heat filed counterclaims for declaratory judgment that it has superior rights to the relevant marks and for cancellation of Mr. Pena's federal and state trademark registrations. Mr. Pena moved to dismiss Miami Heat's counterclaims. Mr. Pena's motion to dismiss is DENIED because Miami Heat has alleged facts that support a plausible claim that it has a superior interest in the CULTURE marks and that Mr. Pena either never used the Marks in commerce or abandoned

---

[1] "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original) (internal quotation marks omitted) (collecting cases).

his use of the Marks.

## II. BACKGROUND

### A. Facts[2]

#### 1. Parties

Mr. Pena is an individual fashion designer and apparel industry entrepreneur. Dkt. No. 19-1 ("Compl.") ¶ 10.[3]  Plaintiff is a resident of Brooklyn, New York and Miami, Florida. Dkt. No. 19, Counterclaims, ("Counterclaims") ¶ 8.  Miami Heat is a retailer of apparel and operates various domestic and international retail clothing stores, as well as an online store. Dkt. No. 19, Answer to Complaint, ("Answer") ¶¶ 27–29.

Defendant NBA Properties, Inc. ("NBAP") is a New York corporation with a principal place of business in New York.  Answer ¶ 8.  NBAP "owns the rights to 'National Basketball Association' ('NBA') and all logos, symbols, and other identifying trademarks and trade dress of the NBA, and is responsible for licensing the names, logos, symbols, color combinations, uniform designs, and other identifying trademarks and trade dress of all thirty NBA member teams." *Id.*  Defendant Nike Inc. is a corporation that retails footwear, apparel, and sporting goods domestically, internationally, and online.  Compl. ¶¶ 51–53.[4]

#### 2. Mr. Pena's Use of the Marks

Mr. Pena operates a clothing business that, as early as 2017, has allegedly "taken efforts at selling" clothing items under the marks CULTURE TV ®, CULTURE TV™, and CULTURE™.

---

[2] When evaluating a motion to dismiss counterclaims for failure to state a claim, a court "must accept all well-pleaded facts as true and construe the answer and counterclaims in the light most favorable to the nonmoving party." *Meridien Int'l Bank Ltd. v. Gov't of the Republic of Liberia*, 23 F. Supp. 2d 439, 445 (S.D.N.Y. 1998); *see also Judd Burstein, P.C. v. Long*, 797 F. App'x 585, 587 (2d Cir. 2019) (summary order); *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011)).
[3] Plaintiff's original complaint does not have paragraph numbers. For ease of reference, this opinion refers to the numbered version provided by Defendants, filed on October 28, 2024. Dkt. No. 19-1.
[4] Plaintiff's initial complaint incorrectly named NBA Inc., FBA II, Inc. d/b/a Miami Heat Limited Partnership, and The Heat Group as defendants. Dkt. No. 1. On December 4, 2024 the parties jointly stipulated and amended the caption to name NBAP, Miami Heat, and Nike Inc. as the correct defendants. Dkt. No. 27.

Compl. ¶¶ 16, 21. He sells and promotes his clothing through wholesale accounts domestically and internationally, as well as through social media and other online sources. *Id.* ¶¶ 18–19. Mr. Pena is the alleged owner of United States Trademark Registration No. 7272550 for the mark CULTURE TV ®. *Id.* ¶ 22. He is the alleged owner of Florida State Trademark Registration No. T24000000629 for the mark CULTURE TV™ and No. T24000000630 for the mark CULTURE™. *Id.* ¶¶ 24–25. The Florida State registrations assert that the marks were first used on April 01, 2017. Dkt. No. 1, Ex. C, D. Mr. Pena has also allegedly filed an application (Trademark Serial Application No. 97520488) with the United States Patent and Trademark Office ("USPTO") for the mark CULTURE™ on August 14, 2024. Compl. ¶ 23. Mr. Pena also alleges that he has made continuous use of the Marks in commerce through the promotion, sale, and offering of clothing items and merchandise under the Marks. *Id.* ¶ 26.

Miami Heat alleges that Mr. Pena has engaged in "concerted effort to capitalize on the well-established trademark rights of the Miami Heat for personal gain by attempting to acquire trademark rights in and to CULTURE Marks." Counterclaims ¶ 24. Miami Heat also alleges that despite Mr. Pena's claim of first use of the Marks, there is no evidence of such use in commerce. *Id.* ¶ 25.

According to Miami Heat, Mr. Pena's first use of the Marks was in or around June 2024 on Mr. Pena's public Instagram page, in posts showing "stock images of clothing with the word 'Culture' digitally affixed to the images." *Id.* ¶ 26. While the posts directed viewers to a "link in bio" to purchase the CULTURE-branded items at www.culture.today, the website was inactive until at least September 2024. *Id.* ¶¶ 26–28. Prior to September 2024, the website showed an inactive page with a message reading, "Sorry, this store is currently unavailable." *Id.* ¶ 28. Miami Heat further alleges that as of September 30, 2024, Mr. Pena's Instagram page was made private and all but one post was deleted or made private. *Id.* ¶ 29. There is no other social media platform on which Mr. Pena offers any merchandise with the Marks at issue for sale. *Id.* ¶ 30. Between September 5, 2024

3

and September 26, 2024—approximately one month after Mr. Pena filed this action—Mr. Pena launched the culture.today website and began offering CULTURE-branded items for sale. *Id.* ¶ 31.

### 3. Miami Heat's Use of "CULTURE" Marks

Around 2015, people affiliated with the Miami Heat basketball team began publicly using the phrase "Heat Culture" to describe the team, and it soon became part of the team's marketing and promotional strategy. Counterclaims ¶¶ 12–15. By at least the 2016–17 NBA season, Miami Heat was "actively offering for sale and selling apparel, such as tank tops and t-shirts, prominently featuring the mark CULTURE standing alone in its retail stores and online." *Id.* ¶ 17. "In addition, the Miami Heat was actively marketing CULTURE-branded apparel items on its social media accounts by at least March 2017." *Id.* "Each year since 2015, the Miami Heat has expanded the kind of CULTURE-branded apparel items it offers for sale," and to date, Miami Heat has sold over 100,000 CULUTRE-branded items with a total sales value of over one million dollars. *Id.* ¶¶ 18–19.[5]

### B. Procedural History

Mr. Pena commenced this action on August 23, 2024. Dkt. No. 1. The complaint asserts four causes of action against Defendants related to their use of CULTURE-related marks: (1) violation of Lanham Act, 15 U.S.C. § 1114; (2) unfair competition and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); (3) common law trademark infringement and unfair competition; and (4) unjust enrichment. Compl. ¶¶ 58–72.

Nike, Inc. filed an answer to the Complaint on October 28, 2024. Dkt. No. 18. NBAP and Miami Heat filed the Answer on the same day. Dkt. No. 19, Answer to Complaint. Miami Heat

---

[5] Miami Heat lists in the Counterclaims its "extensive product offerings under its CULTURE brand." Counterclaims ¶ 18. These include "t-shirts, infant and children's t-shirts, tank tops, polo shirts, jerseys, infant and children's jerseys, shorts, children's shorts, pants, children's pants, sweaters, hoodies, children's hoodies, crew necks, pullover sweatshirts, quarter-zip and half-zip sweatshirts, jackets, tracksuits, infant onesies, footwear, hats/caps, bucket hats, bandanas, face masks, backpacks, pouches, bags, towels, pennants, pins, patches, plush bears, foam hands, bracelets, lanyards, balls, magnets, posters, keychains, dog toys, tumbler cups, mugs, shot glasses, pint glasses, bottle openers, bobble heads, stickers, decals, license plate frames, journals, and pens." *Id.*

also filed the Counterclaims on October 28, 2024.  Dkt. No. 19, Counterclaims.  Miami Heat first seeks declaratory judgment (1) that Miami Heat is the senior user of CULTURE marks; (2) that Defendants' use of CULTURE marks does not infringe on Mr. Pena's purported Marks—nor unjustly enriches them—because Miami Heat has superior rights and priority of use; (3) that Mr. Pena has no enforceable rights in the Marks due to a lack of use in commerce; and (4) that Mr. Pena has abandoned any rights he may have had in the Marks by not continuously using them in commerce.  *Id.* ¶¶ 45–47.  Moreover, Miami Heat claims that due to likelihood of confusion between the marks owned by them and Mr. Pena's use of the Marks, Mr. Pena's federal and state trademark registrations, as well as the pending federal registration, should be cancelled pursuant to Sections 2 and 14 of the Lanham Act and Fla. Stat. Ann. § 495.101.  *Id.* ¶¶ 48–70.

On December 10, 2024, Mr. Pena moved to dismiss the Counterclaims.  Dkt. No. 28 ("Mot.").  Miami Heat filed its opposition on January 7, 2025.  Dkt. No. 30 ("Opp.").  Mr. Pena filed a reply on January 18, 2025.  Dkt. No. 33.

### III.    LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), the Court must accept all factual allegations in the Counterclaims as true and draw all reasonable inferences in Miami Heat's favor.  *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 110–11 (2d Cir. 2010).  To avoid dismissal, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A formulaic recitation of the elements of a cause of action, devoid of supporting facts, does not suffice.  *Id.*  To satisfy the "plausibility" requirement, the plaintiff must plead facts that permit the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Determining whether a complaint states a plausible claim is a "context-specific task that

5

requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87–88 (2d Cir. 2013) (alterations in original) (quoting *Iqbal*, 556 U.S. at 678). "A complaint must therefore contain more than 'naked assertion[s] devoid of further factual enhancement.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "Pleadings that contain 'no more than conclusions . . . are not entitled to the assumption of truth' otherwise applicable to complaints in the context of motions to dismiss." *Id.* (quoting *Iqbal*, 556 U.S. at 678–79). Thus, a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557).

    On a motion to dismiss, a court must generally "limit itself to the facts stated in the complaint." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006) (quoting *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)). A court may also consider "documents attached to the complaint as exhibits, . . . documents incorporated by reference in the complaint . . . [and] document[s] integral to the complaint." *DiFolco*, 622 F.3d at 111 (internal quotation marks and citation omitted). In the Rule 12(b)(6) context, "[a] court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). "The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006). "The Rule thus assesses the legal feasibility of the complaint but does not weigh the evidence that might be offered to support it." *Id.*

The Declaratory Judgment Act permits a district court, "[i]n a case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III" of the Constitution. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). The case-or-controversy requirement is satisfied if the dispute is "definite and concrete, touching the legal relations of parties having adverse legal interests" and is "real and substantial" such that it "admit[s] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* In a declaratory judgment action involving trademarks, "the plaintiff must adequately allege that he or she has engaged in a course of conduct evidencing a definite intent and apparent ability to commence use of the marks on the product." *Saleh v. Sulka Trading Ltd.*, 957 F.3d 348, 354 (2d Cir. 2020) (internal quotation marks omitted).

Under Section 37 of the Lanham Act, "in any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1119. "The net effect of [section] 37 is to give to the courts concurrent power with the Patent and Trademark Office to conduct cancellation proceedings. Thus, a registration may be collaterally attacked in any civil action where validity of the mark is in issue." *Patsy's Italian Rest., Inc. v. Banas*, 575 F. Supp. 2d 427, 464 (E.D.N.Y. 2008), *aff'd*, 658 F.3d 254 (2d Cir. 2011) (quoting 4 McCarthy on Trademarks and Unfair Competition § 30:109).

## IV.   DISCUSSION

Mr. Pena moves to dismiss Miami Heat's Counterclaims for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Specifically, Mr. Pena argues that Miami Heat's declaratory judgment claims

are duplicative of its affirmative defenses and that, in any event, they are factually unsupported. Mot. 2–4.  Mr. Pena also argues that Miami Heat's claims are preempted by federal law to the extent they rely on state law theories.  Mot. at 4.

### A. Miami Heat's Request for Declaratory Judgment Is Not Duplicative

Miami Heat's declaratory judgment claim presents a basis for relief independent of Mr. Pena's claims, and therefore Miami Heat's claim is not duplicative of its affirmative defenses.  A court may strike a counterclaim when it is merely the "mirror image" of an opposing party's claim and serves no independent purpose.  *See Worldwide Home Prods., Inc. v. Bed Bath and Beyond, Inc.*, No. 11-cv-3633 (LTS), 2013 WL 247839, at *2 (S.D.N.Y. Jan. 22, 2013); *Arista Records LLC v. Usenet.com, Inc.*, No. 07-cv-8822 (HB), 2008 WL 4974823, at *3 (S.D.N.Y. Nov. 24, 2008).  In doing so, "the court must consider whether a case or controversy would still exist in connection with the counterclaim if the court entered a judgment dismissing the opponent's claim."  *Worldwide Home Prods.*, 2013 WL 247839, at *2.  To satisfy the case-or-controversy requirement in a declaratory judgment action involving trademarks, a claimant is required to adequately allege "that he or she has engaged in a course of conduct evidencing a definite intent and apparent ability to commence use of the marks on the product."  *Saleh v. Sulka Trading Ltd.*, 957 F.3d 348, 354 (2d Cir. 2020).

Miami Heat's Counterclaims assert that Miami Heat has the definite intent and apparent ability to continue to use the Marks in commerce.  Miami Heat alleges that since as early as 2015 it has used the Marks in a variety of goods and services, such as apparel and entertainment services.  Counterclaims ¶ 19–21.  "Therefore, if Plaintiff[] were to withdraw [his] claims prior to a ruling on the merits, Defendants would remain vulnerable to liability on the same claims, and thus, a case or controversy would still exist in connection with the declaratory judgment counterclaims."  *Town & Country Linen Corp. v. Ingenious Designs LLC*, 2020 WL 3472597, at *14 (S.D.N.Y., 2020) (internal brackets and quotation marks omitted); *see also Starter Corp. v. Converse, Inc.*, 84 F.3d 592, 597 (2d Cir.

8

1996) (finding declaratory judgment was proper to determine athletic apparel manufacturer's rights to use their marks in the athletic footwear market and resolve the demonstrated uncertainty between the parties as to their legal relations).

### B. The Court Cannot at This Stage Determine Whether Miami Heat's Use of the Marks is "Ornamental" and Thus Not Protectable

Any argument that Miami Heat's use of the Marks has been "ornamental" is a fact intensive matter that may not be properly addressed at the motion to dismiss stage. "A mark is valid if it is sufficiently distinctive." *Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc.*, 478 F. Supp. 2d 340, 356 (E.D.N.Y. 2007). The Second Circuit and other courts have established categories for classifying marks. Marks are classified, in ascending order of strength, as "(1) generic; (2) descriptive; (3) suggestive; [or] (4) arbitrary or fanciful." *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 384–85 (2d Cir. 2005) (*quoting TCPIP Holding Co. v. Haar Communications, Inc.*, 244 F.3d 88, 93 (2d Cir.2001)). "Generic marks are those consisting of words identifying the relevant category of goods or services." *Id.* at 385. "They are not at all distinctive and thus are not protectable under any circumstances." *Id.* Reading Mr. Pena's ornamentation argument as saying that Miami Heat's use of the Marks is generic and not protectable, that issue is a fact intensive inquiry that is not properly decided at motion to dismiss stage. *See RiseandShine Corp. v. PepsiCo, Inc.*, No. 23-1176-cv, 2024 WL 5165388, at *2 (2d Cir. Dec. 19, 2024) (summary order) (recognizing that unlike the issue of a mark's strength, its classification is a factual inquiry); *see also* 1 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 7:24 (5th ed. 2024) ("When words or designs are used on T-shirts, it is a highly fact-intensive determination of whether these symbols are solely decorative ornamentation.").

### C. Miami Heat's Counterclaims Plausibly Plead Priority and Senior Use

Taking Miami Heat's factual allegations as true, its pleadings state a plausible claim for relief based on priority and senior use. "One of the fundamental premises underlying the registration provisions in the Lanham Act is that trademark rights flow from priority and that priority is acquired

9

through use." *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 146-47 (2d Cir. 2007) (citing 15 U.S.C. § 1057(c) (stating that registration of mark "shall constitute constructive use of the mark, conferring a right of priority, nationwide in effect . . . against any other person except for a person whose mark has not been abandoned and who, prior to such filing[,] . . . has used the mark")). "Thus, so long as a person is the first to use a particular mark to identify his goods or services in a given market, and so long as that owner continues to make use of the mark, he is 'entitled to prevent others from using the mark to describe their own goods' in that market." *Id.* at 147 (quoting *Defiance Button Mach. Co. v. C & C Metal Prods. Corp.*, 759 F.2d 1053, 1059 (2d Cir. 1985)).

Similarly, under the common law, in establishing a trademark, the first person to use a mark "obtains an enforceable right to exclude others from using it, as long as the initial appropriation and use are accompanied by an intention to continue exploiting the mark commercially." *La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1271 (2d Cir. 1974). Moreover, even if a plaintiff makes the showing required by federal and state law to establish ownership of a protected mark, the alleged infringer may nevertheless prevail if it can establish the owner's prior abandonment of the mark. *See* 15 U.S.C. § 1115(b)(2); *ITC Ltd.* 482 F.3d at 146 (recognizing that "rights in a trade name may be lost by abandonment" (quoting *Nercessian v. Homasian Carpet Enter., Inc.*, 60 N.Y.2d 875, 877 (1983)). In fact, "abandonment is not only an affirmative defense to an infringement action; it is a ground for cancelling a federally registered mark." *Id. See also* 15 U.S.C. § 1064(3).

Miami Heat has alleged facts that as early as 2015–2017, the marks "CULTURE" and "COURT CULTURE" were used in marketing and promoting the team as well as in commerce of team-branded apparel. Counterclaims ¶¶ 17–20. Each year since, it has expanded its CULTURE-branded product offerings, selling over 100,000 units of apparel, worth over a million dollars, to date. *Id.* ¶ 18–20. These allegations suffice to state a claim that Miami Heat's use of CULTURE

10

marks was "deliberate and continuous, not sporadic, casual or transitory." *Threeline Imports, Inc. v. Vernikov*, 239 F. Supp. 3d 542, 560 (E.D.N.Y. 2017) (citing *La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1272 (2d Cir. 1974)) (holding that tens of thousands of units sold constitutes "deliberate and continuous" use). Further, Miami Heat has pursued registration of its marks and has continued to market, advertise, and sell goods with their marks. Counterclaims ¶¶ 17–22. These facts make sufficiently plausible that Miami Heat has used and intends to continue using the marks commercially.

Miami Heat's factual allegations, accepted as true for purposes of this motion, also demonstrate that Mr. Pena did not begin selling or marketing apparel bearing his purported Marks until June 2024 at the earliest and perhaps as late as September 2024. Counterclaims ¶¶ 25–32, 41–44. While Mr. Pena asserts that he has a "documented history of trademark use," the Court at this stage of the proceeding must accept Miami Heat's allegations in support of its Counterclaims as true. Mr. Pena will have the opportunity to present his evidence to the factfinder at a later stage of the case, should the case proceed to that point. Therefore, Miami Heat has pleaded facts sufficient to state a plausible inference of senior bona fide use and priority.

### D. Miami Heat Has Pleaded a Plausible Claim for Cancellation

"[A] federal court may cancel the registration of a federally registered trademark if the challenger has standing and there is a valid ground for cancellation." *Brookfield Office Props. Inc. v. Hotel*, No. 16-cv-1854, 2016 WL 6906713, at *3 (S.D.N.Y. Nov. 18, 2016). "[T]he principles applicable to the initial registrability of a mark should also be applied to a claim seeking the cancellation of a registration." *Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254, 266 (2d Cir. 2011) (citing 3 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 20:52 (5th ed.) ("[F]or Principal Register marks not yet five years on the register, cancellation may be based on any ground in the Lanham Act that would have barred registration in the first instance.")). Section 2(d) of the

Lanham Act, 15 U.S.C. § 1052(d), provides that a registration may be refused if the trademark "so resembles a mark . . . previously used in the United States by another and not abandoned, as to be likely . . . to cause confusion, or to cause mistake, or to deceive." Additionally, section 14 of the Lanham Act lists grounds for cancellation of a trademark, which include that the mark "has been abandoned" and that "its registration was obtained fraudulently." 15 U.S.C. § 1064(3).

### 1. Likelihood of Confusion

The question of whether there is a likelihood of confusion is a question of fact not appropriate for resolution at this stage in the action. The issue of likelihood of confusion turns upon "whether ordinary consumers are likely to be misled or confused as to the source of the product [or service] in question because of the entrance in the marketplace of the junior user's mark." *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016) (internal quotation marks and alterations omitted). To determine whether there is a likelihood of confusion, courts analyze the eight *Polaroid* factors, namely: "(1) strength of the trademark; (2) similarity between the two marks; (3) proximity of the products and their competitiveness with one another; (4) likelihood the prior owner may 'bridge the gap' in the markets for their products; (5) evidence of actual consumer confusion; (6) the defendant's good faith in adopting its imitative mark; (7) quality of the defendant's product compared with the plaintiff's product; and (8) sophistication of the buyers." *1-800 Contacts, Inc. v. JAND, Inc.*, 119 F.4th 234, 247 (2d Cir. 2024).

The question of whether there is a likelihood of confusion is "usually reserved for a jury, as it requires a fact intensive examination of the probable reactions of prospective purchasers of the parties' goods." *Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 145 (S.D.N.Y. 2022) (denying parties' cross-motions for summary judgment as to trademark infringement claims because "neither party ha[d] solidly established that, viewed in totality, 'the undisputed evidence . . . lead[s] only to one conclusion as to whether confusion is likely'" (quoting *Cadbury Beverages, Inc. v. Cott Corp.*,

12

73 F.3d 474, 478 (2d Cir. 1996))).

Therefore, the Court need not address at this stage whether the factors are likely to establish actual confusion. From the face of the Counterclaims, the Marks share the same word, in a similar font and style as the marks used by Miami Heat. *See* Counterclaims ¶¶ 17, 26; *see also* Compl. ¶¶ 2, 32.[6] It suffices at this stage that Miami Heat has alleged that Mr. Pena "use[s] a mark identical to the mark for which [Miami Heat] holds a trademark to advertise or sell the same type of goods sold by [Miami Heat]" in the same geographic area. *Pulse Creations, Inc. v. Vesture Group, Inc.*, 154 F. Supp. 3d 48, 56 (S.D.N.Y. 2015). While Mr. Pena "may ultimately prevail" at showing that Miami Heat's marks are "weak" or ornamental, "it is not dispositive at this stage of the proceedings." *Id.* And because, as discussed above, Miami Heat has plausibly alleged that its use of CULTURE marks predates Mr. Pena's use, Miami Heat has stated a plausible claim for cancellation of the federal marks pursuant to section 2(d) of the Lanham Act.

### 2. Fraudulent Trademark Filing

Miami Heat has adequately pleaded that Mr. Pena registered the Marks fraudulently. To adequately prove that it is entitled to trademark cancelation due to fraud, the party seeking cancellation must show the statements made to the USPTO were "knowing misstatement[s] of material fact that indicate a deliberate attempt to mislead" the USPTO. *MPC Franchise, LLC v. Tarntino*, 826 F.3d 653, 658 (2d Cir. 2016) (quoting *Orient Exp. Trading Co., Ltd. v. Federated Dept. Stores, Inc.*, 842 F.2d 650, 653 (2d Cir. 1988)). Thus, mere evidence that an applicant "should have known" statements it made to the USPTO were false is insufficient to prove "a trademark holder fraudulently obtained [the] trademark." *Id.* at 659–60 (holding that to cancel a trademark, "the allegedly fraudulent statements [in the application] may not be the product of mere error or

---

[6] It is unconventional that Mr. Pena is simultaneously claiming that Miami Heat infringed on his trademark and "has already caused confusion and is likely to continue to cause confusion," Compl. ¶ 46, while also arguing that "Miami Heat's claim of likely confusion is speculative and unsupported by evidence," Mot. at 5.

13

inadvertence"); *see also A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*, 241 F. Supp. 3d 461, 480 (S.D.N.Y. 2017) ("[A] party claiming that a trademark was procured by fraud must establish that the registrant acted 'with intent to deceive' and made 'a misstatement of a material fact,' i.e., a fact 'that would have affected the [USPTO's] action on the application[ ]' in question." (quoting *Quality Serv. Grp. v. LJMJR Corp.*, 831 F.Supp.2d 705, 710 (S.D.N.Y. 2011))). Allegations of fraudulent registration "must also satisfy the pleading requirements of Rule 9(b)." *Id.*

Miami Heat alleges that Mr. Pena made knowing misrepresentations in his application to the USPTO and in his application for a Florida trademark. He allegedly represented that he was using the Marks on or in connection with apparel sales as early as 2017. Counterclaims ¶¶ 35, 38–39. However, as discussed, Miami Heat alleges that Mr. Pena was not making any bona fide use in commerce whatsoever of the Marks until at least 2024. *Id.* ¶ 31. If Miami Heat's allegations are true, Mr. Pena was not using the Marks in commerce either as of the date identified in his trademark applications, or at the time that Mr. Pena filed the applications, or even when Mr. Pena filed the Complaint in this action. Counterclaims ¶ 25–31. Such false representations, if proven, would constitute a knowing attempt to mislead the USPTO, as well as this Court. *See Tuccillo v. Geisha NYC, LLC*, 635 F. Supp. 2d 227, 243 (E.D.N.Y. 2009) (holding that an applicant was "certainly aware" that they had not started their business on the date which they represented to the USPTO). And "there can be no dispute that this falsehood was material, given that the statement regarding actual use is the entire purpose of the application to the USPTO." *Id.* As such, Miami Heat has alleged sufficient facts to state a plausible case of cancellation based on fraudulently filed trademark applications.

### 3. Abandonment

Miami Heat adequately pleads that Mr. Pena abandoned the Marks. "The abandonment doctrine derives from the well-established principle that trademark rights are acquired and

14

maintained through use of a particular mark." *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 146–47 (2d Cir. 2007) (quoting *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 581 (2d Cir. 1990)); *see also United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918) ("There is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed."). This is true even of marks that have been registered with the Patent and Trademark Office. *ITC Ltd.*, 482 F.3d at 146 ("Although [a mark's] registration is a predicate to its protection under [section 32(1)(a) of] the Lanham Act, the underlying right depends not on registration but rather on use."). Indeed, one of the fundamental premises underlying the registration provisions in the Lanham Act is that trademark rights flow from priority and that priority is acquired through continued use. *See*, e.g., 15 U.S.C. § 1057(c) (providing that registration of a mark "shall constitute constructive use of the mark, conferring a right of priority, nationwide in effect . . . against any other person except for a person whose mark has not been abandoned and who, prior to such filing[,] . . . has used the mark"). Thus, so long as a person is the first to use a particular mark to identify his goods or services in a given market, and so long as that owner continues to make use of the mark, he is "entitled to prevent others from using the mark to describe their own goods" in that market. *Defiance Button Mach. Co. v. C & C Metal Prods. Corp.*, 759 F.2d 1053, 1059 (2d Cir.1985).

"If, however, an owner ceases to use a mark without an intent to resume use in the reasonably foreseeable future, the mark is said to have been 'abandoned.'" *ITC Ltd.*, 482 F.3d at 148; *see also* 2 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 17:5, at 17–18 (4th ed. 2002) (observing that "abandonment" refers to situations involving the "non-use of a mark, coupled with an express or implied intention to abandon or not to resume use"). "Once abandoned, a mark returns to the public domain and may, in principle, be appropriated for use by other actors in the marketplace in accordance with the basic rules of trademark priority." *ITC Ltd.*, 482 F.3d at 147 (internal quotation marks and citations omitted).

15

The party asserting abandonment bears the burden of persuasion with respect to two facts: (1) non-use of the mark by the legal owner, and (2) lack of intent by that owner to resume use of the mark in the reasonably foreseeable future. *See* 15 U.S.C. § 1127; *ITC Ltd.*, 482 F.3d at 146–47; *Stetson v. Howard D. Wolf & Assocs.*, 955 F.2d 847, 850 (2d Cir.1992); *see also On–Line Careline, Inc. v. America Online, Inc.*, 229 F.3d 1080, 1087 (Fed. Cir. 2000) (placing burden of persuasion on party seeking cancellation on ground of abandonment); *Warner Bros. Inc. v. Gay Toys, Inc.*, 724 F.2d 327, 334 (2d Cir.1983) (placing burden of persuasion on party asserting abandonment as defense).

Furthermore, the Lanham Act expressly states that "[n]onuse" of a mark "for 3 consecutive years shall be prima facie evidence of abandonment." 15 U.S.C. § 1127. The Second Circuit has explained that "the term 'prima facie evidence' in this context means 'a rebuttable presumption of abandonment.'" *ITC Ltd.* 482 F.3d at 147 (quoting *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir.1980)). Such presumption "eliminates the challenger's burden to establish the intent element of abandonment as an initial part of its case." *Emmpresa Cubana Del Tabaco v. Culbro Corp.*, 213 F. Supp. 2d 247, 268 (S.D.N.Y. 2002) (quoting *Imperial Tobacco Ltd. v. Philip Morris, Inc.*, 899 F.2d 1575, 1579 (Fed. Cir. 1990)). However, in the absence of evidence of non-use of the mark for three consecutive years, the party seeking trademark cancellation must meet the burden of persuasion on both elements. *See ITC Ltd.*, 482 F.3d at 147; *see also Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.*, 841 F. Supp. 1339, 1355 (E.D.N.Y. 1994) ("Abandonment being in the nature of a forfeiture, must be strictly prov[en].").

Miami Heat alleges facts in support of the assertion that Mr. Pena did not use the Marks for three consecutive years. Miami Heat alleges that Mr. Pena's first use of the mark "CULTURE" dates to around June 2024 on a post in his social media. Counterclaims ¶ 26. Miami Heat also alleges that Mr. Pena did not acquire the rights to the domain name "culture.today" until around June 2024. *Id.* ¶ 27. And this domain was inactive until at least September 2024. *Id.* ¶ 28. Because

16

Miami Heat have plausibly pleaded that there is no evidence that Mr. Pena was publicly selling clothing bearing the Marks, Miami Heat has stated a prima facie claim that Mr. Pena abandoned the mark during the period from 2017 through 2024, during which Miami Heat sold the allegedly infringing products.

### E.  Miami Heat's Claims Are Not Preempted by Federal Law

Miami Heat's counterclaim for cancellation is not preempted by the Lanham Act.  The Supreme Court has stated that a trademark, even when not registered under federal law, "can be enforced under state common law, or if it has been registered in a State, under that State's registration system."  *Matal v. Tam*, 582 U.S. 218 (2017) (citing 3 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 19:3, at 19–23 (explaining that "[t]he federal system of registration and protection does not preempt parallel state law protection, either by state common law or state registration," and "[i]n the vast majority of situations, federal and state trademark law peacefully coexist")).

The counterclaim for cancellation of Mr. Pena's federally registered marks relies correctly on the Lanham Act, 15 U.S.C. § 1119.  Insofar as Miami Heat relies on Fla. Stat. Ann. § 495.101, it relies on that statute to seek cancellation of Mr. Pena's Florida-registered marks.  Therefore, preemption does not bar Miami Heat's counterclaims.

### V.    CONCLUSION

Miami Heat has alleged sufficient facts to state a plausible claim for a declaratory judgment and cancellation of Mr. Pena's state and federal trademarks. Mr. Pena's motion to dismiss is therefore DENIED.  The Clerk of Court is directed to terminate the motion pending at Dkt. No. 28.

SO ORDERED.

Dated: April 18, 2025
New York, New York

_____
GREGORY H. WOODS
United States District Judge